**In re GUARDIANSHIP OF LAUDER; Johnson, Appellant.**

**In re Guardianship of Bryan; Johnson, Appellant.**

**In re Power of Attorney of Bryan; Johnson, Appellant.**

[Cite as *In re Guardianship of Lauder*, 150 Ohio App.3d 277, 2002-Ohio-6102.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

Nos. 01AP–1180, 01AP–1181 and 01AP–1182.

Decided Nov. 12, 2002.

Porter, Wright, Morris & Arthur L.L.P., Mark K. Merkle Jr. and Constance M. Greaney, for appellee Lloyd E. Fisher Jr., successor guardian.

Wolman, Genshaft & Gellman, Benson A. Wolman, Nelson E. Genshaft and Susan B. Gellman, for appellant.

LAZARUS, Judge.

{¶ 1}  Appellant, Bryan B. Johnson, former guardian for Lucille Lauder and Helen Bryan, and former attorney-in-fact for Helen Bryan, appeals from the October 3, 2001 entry regarding fees and exceptions to accounts filed by the Franklin County Court of Common Pleas, Probate Division.  For the reasons that follow, we reverse and remand with the recommendation that, upon remand, the trial judge voluntarily recuse himself from further proceedings to enhance the appearance of impartial consideration of the issues.

{¶ 2}  In April 1998, appellant received a referral from Linda Kaye, a social worker at Winchester Place Nursing Home, concerning the financial exploitation of two elderly sisters, Lucille Lauder and Helen Bryan.  Appellant is an experienced probate attorney who had served as a part-time magistrate for the probate court for nine years.  Kaye had become acquainted with appellant because he had served as a guardian for other patients in the facility, and she believed that he had the ability to handle a case of that nature.

{¶ 3}  Kaye informed appellant that attorney Karen Bond had taken advantage of the sisters and embezzled substantial amounts of money from them.  Kaye also advised appellant that Lucille Lauder was mentally incompetent and in need of a guardian, but that Helen Bryan was mentally competent and desired assistance through a power of attorney.  The sisters were in rather dire straits, having recently had their Medicaid eligibility terminated, their nursing home and pharmacy bills unpaid and in arrears, and no assets with which to pay their bills, or to pay an attorney.

{¶ 4}  Appellant and an associate drove to the nursing home and interviewed the sisters.  They were able to discuss the situation with Helen Bryan but were unable to have a meaningful discussion with Lucille Lauder because of her diminished capacity.  Appellant determined that there was reason to believe that Karen Bond had financially exploited both women.

{¶ 5}   Helen Bryan executed a durable power of attorney appointing appellant as her attorney-in-fact on April 14, 1998.   Appellant filed an application to be appointed guardian for Lucille Lauder on April 16, 1998, and by means of an expedited hearing in the probate court, appellant was appointed guardian of the person and the estate for Lauder on April 20, 1998.   At that hearing, appellant disclosed his status as attorney-in-fact for Bryan to the magistrate.

{¶ 6}   Appellant pursued concealment of assets actions against Karen Bond and her family in his capacity as both guardian and attorney-in-fact.   As part of this litigation, appellant was required to file a land sale proceeding in Lauder's guardianship to sell her interest in a house appellant had recovered from Karen Bond. On August 31, 1998, the probate court approved an agreed judgment entry that allocated litigation proceeds disproportionately between Bryan's power of attorney and Lauder's guardianship.   The judge's order specifically ordered appellant to continue to investigate and pursue the concealment of assets action.

{¶ 7}   On June 10, 1999, appellant was appointed guardian of the person and the estate for Bryan.   Appellant also remained Bryan's attorney-in-fact under the durable power of attorney.   Appellant filed an inventory in the guardianship of Bryan on June 11, 1999.   The inventory indicated that the assets consisted of a Bank One checking account in the sum of $1,000. At the bottom of the page was a footnote indicating there were other assets managed by appellant as attorney-in-fact that were not part of the guardianship.

{¶ 8}   Between April 1998 and June 2000, appellant applied for and received payment of fees from the Lauder guardianship in the amount of $35,392.50, the majority of which were for litigation efforts related to the misappropriation of assets by Karen Bond. From April 1998 through December 1999, appellant received fees in the amount of $60,866 through Bryan's power of attorney.   In October 2000, appellant applied for and subsequently withdrew an application for fees from the Bryan guardianship in the amount of $16,571.50.   Appellant filed an application for fees in the sum of $23,071.50 in the guardianship of Lucille Lauder in October 2000.   That application was rejected by the magistrate and the chief magistrate, and referred to the probate judge.

{¶ 9}   The probate judge questioned whether any fees were billed to Helen Bryan and, upon further investigation, inquired as to how the fees were split between the two wards.   He requested that all of the fee applications be brought current along with a full disclosure of all fees previously paid in the guardianships and the power of attorney, in order to provide the court with the "big picture."

{¶ 10}   As of November 2000, appellant's law firm had been paid approximately $96,000 in prior billings and appellant was seeking additional amounts of approximately $58,000.   Thus, the aggregate fees paid and applied for from the three entities, the Bryan power of attorney, the Bryan guardianship, and the

Lauder guardianship, totaled $155,137.50. Appellant had billed his time at an average rate of $131 per hour. Appellant had successfully recovered assets totaling $290,017, including automobiles, real estate, and $100,000 from the Clients' Security Fund. Appellant was not successful in obtaining any recovery against Karen Bond's malpractice carrier, or Helen Bryan's California banks.

{¶ 11} On December 18, 2000, the probate judge called appellant in to discuss the pending application for fees. According to appellant, the judge accused appellant of breaching his fiduciary duty, conflict of interest, misrepresenting facts to the court, deliberately shopping for different magistrates to have fee billings approved, and perpetrating a fraud upon the court. The judge stated that he believed that the fees were excessive and that appellant should have been able to handle all of the legal matters involved for a fee of approximately $30,000 to $40,000.

{¶ 12} On December 19, 2000, the judge telephoned Linda Kaye, the social worker who initially referred appellant to Lauder and Bryan. Kaye swore in an affidavit that she and the judge had an extensive dialogue about her former patient, Helen Bryan. The judge wanted to know why Kaye had contacted appellant. He seemed very suspicious of Kaye's professional relationship with appellant and suspicious of her involvement with appellant in the circumstances surrounding the signing of the power of attorney by Helen Bryan. The judge gave Kaye the distinct impression throughout the conversation that she had done something wrong by referring Helen Bryan to appellant. Kaye also stated that, at no time during this telephone conversation, did she ever state that Bryan was incompetent in any manner.

{¶ 13} The probate judge disputes this account and indicated that Kaye stated that Bryan was not competent to hire a lawyer.

{¶ 14} On December 20, 2000, the judge telephoned appellant to inform him that he had set a hearing on his own motion to have appellant removed as guardian. Appellant agreed to resign voluntarily so that a successor guardian could be appointed. Appellant prepared his resignation and walked it over to the judge for his signature. The judge stated that he had already spoken to attorney Lloyd Fisher about the case and that attorney Fisher had agreed to accept the appointment as successor guardian and conduct a complete investigation.

{¶ 15} On December 28, 2000, after appearing before the probate judge in another matter, appellant met privately with the probate judge in chambers to discuss the Helen Bryan and Lucille Lauder guardianship matters. At that meeting, appellant asked the probate judge to voluntarily recuse himself, as appellant believed the judge had prejudged the matter. The probate judge refused to recuse himself. The next day, appellant and the probate judge spoke again. Appellant swore in an affidavit that the probate judge stated that he

thought he should recuse himself, but he did not want to recuse himself. According to appellant, the probate judge also said that if appellant requested that the probate judge recuse himself, the probate judge would immediately report appellant to the Disciplinary Counsel for ethical violations.

{¶ 16} The probate judge disagreed with this version of what transpired at the meeting, stating that he informed appellant and appellant's counsel that regardless of whether he recused himself, he was going to file a disciplinary action against appellant.

{¶ 17} Appellant filed his final and nondistributive accounting with the probate court on December 29, 2000. Attorney Fisher was appointed successor guardian on January 2, 2001. On February 27, 2001, appellant filed his final and distributive accounts for the guardianships and power of attorney. On March 28, 2001, attorney Fisher, as successor guardian, filed exceptions to the accounts of appellant.

{¶ 18} On April 19, 2001, appellant filed a "Memorandum in Support of Approval of Inventory and Accountings." In his memorandum, appellant reviewed how he came to be involved with the sisters who had been financially exploited by attorney Karen Bond. He discussed coming to the same conclusion as social worker Linda Kaye in her assessment of the mental capacity of Helen Bryan and Lucille Lauder. Appellant summarized the various legal proceedings he became involved with on behalf of the sisters and his vigorous pursuit of assets. Appellant noted that although both the United States Attorney and the Federal Bureau of Investigation were involved in criminal proceedings against Karen Bond in federal district court, they were prohibited from providing appellant with information that would have assisted him in his investigation of the sisters' claims against Karen Bond. This resulted in appellant's having to conduct a parallel investigation with a resulting duplication of efforts.

{¶ 19} In his May 2, 2001 "Memorandum Contra Approval of Inventory and Accounting," the successor guardian agreed that the sisters had been victimized by attorney Karen Bond, who had defrauded them out of substantial assets. The successor guardian noted that there was no question that appellant expended a substantial amount of time and effort on many matters in an attempt to recover damages and assets for Lauder and Bryan. He also noted that Karen Bond was a difficult person to pursue for recovery of assets and damages. There were, however, other persons who were involved in pursuit of Karen Bond in criminal and civil matters. The successor guardian objected to the aggregate attorney fees paid and applied for by appellant and his law firm, noting that the amount of the fees paid and requested was approximately 50 percent of the recovery. In addition, over $60,000 of fees were paid under the Bryan power of attorney without probate court approval.

{¶ 20} The probate court set a hearing on all appellant's accounts for May 7, 2001. Appellant retained counsel to represent him. Appellant's counsel and the successor guardian negotiated an agreement under which appellant would apply for a reduced final fee for Bryan from $16,571.50 to $9,498.23, and a reduced final fee for Lauder from $42,307.50 to $24,243.27. Both counsel signed a proposed entry awarding the reduced fees; the successor guardian made clear, however, that he did not approve the proposal, but he would not except to it. On May 4, 2001, appellant's counsel moved to convert the hearing to a status conference to present the agreed entry on fees to the court.

{¶ 21} The probate court declined to approve the draft entry, declined to convert the hearing to a status conference, and declined a continuance to allow appellant to arrange subpoenas and obtain an expert witness on attorney fees. The court announced in the hearing that it had its own set of exceptions to the accounts. Neither party had witnesses present to testify, but the court listened to the representations and arguments of counsel.

{¶ 22} The successor guardian represented that he did not have any exceptions to the expenditures or items of income. Rather, the sole basis for the exceptions was the aggregate amount of attorney fees applied for and paid. The successor guardian also represented that the amount of time expended by appellant was substantially correct, and that based on conversations with people involved with the recovery of assets, Karen Bond was an extremely difficult defendant to pursue. The successor guardian also represented that he did not find any evidence of solicitation. He stated that he did not do a great deal of independent investigation into Bryan's competency, but he agreed that at the inception of the case, Bryan was competent and Lauder was not. The successor guardian was of the opinion that once appellant was appointed guardian of Helen Bryan, he should not have continued to operate under the power of attorney.

{¶ 23} Near the end of the hearing, the probate judge represented to counsel that he had telephoned Linda Kaye, and that what Linda Kaye had told the probate judge was totally different from what counsel had represented. The judge indicated that Kaye had informed him that Helen Bryan was not competent to hire a lawyer, so Kaye called appellant and hired a lawyer for her.

{¶ 24} Following the hearing, the court, on its own motion, subpoenaed the medical records of Bryan at Winchester Place Nursing Home. The court then delivered the records to the successor guardian, who moved to have them admitted into evidence. Appellant opposed the motion, and the probate court granted the motion on July 9, 2001.

{¶ 25} Appellant filed an affidavit of disqualification with the Ohio Supreme Court on June 11, 2001. The Chief Justice denied the motion on June 27, 2001.

Appellant moved for reconsideration, and that motion was denied on August 3, 2001.

{¶ 26} On October 3, 2001, the probate court issued an entry regarding fees and exceptions to accounts. The probate court found that it was questionable whether Bryan had the ability to understand and consent to the actions of appellant as her attorney-in-fact, particularly after she was adjudicated incompetent, and therefore the only effect of proceeding under the power of attorney after the guardianship was created was to secrete appellant's actions from the probate court.

{¶ 27} With respect to the attorney fees, the court found double-billing of attorney fees with respect to the land sale action, no evidence that the case was extremely difficult, and that the timesheets were grossly inflated as to the time involved or the necessity for expending such time. The probate court concluded that the combined guardianship/attorney fees should be $40,000.

{¶ 28} The probate court also found that appellant had violated his fiduciary duty as attorney-in-fact and as guardian for Helen Bryan by billing and paying to himself excessive fees, attempting to conceal the payments from the scrutiny of the probate court, and for exploiting a conflict of interest by failing to scrutinize as guardian of the estate his actions as attorney-in-fact. The probate court further found that appellant had breached his fiduciary duty as guardian of Lucille Lauder by billing and paying to himself excessive fees and not disclosing to the court the full amounts of fees paid.

{¶ 29} This appeal followed, with appellant assigning as error the following:

{¶ 30} "First Assignment of Error: The probate court's apparent bias and prejudice prevented Mr. Johnson from receiving a fair hearing.

{¶ 31} "Second Assignment of Error: The probate court's determination was incorrect both as a matter of law and on the facts.

{¶ 32} "Third Assignment of Error: The probate court made procedural errors that deprived Mr. Johnson of his constitutional right to due process of law."

{¶ 33} Appellant's first and third assignments of error are related and will be addressed together. Appellant argues that the record is replete with evidence of the probate judge's bias, that it is apparent that the probate court prejudged the matter, and that the judge made up his mind without considering the facts and ignored the successor guardian's investigation when he disagreed with the probate court's preformed opinion. Appellant contends that the judge's decision to rely on his own ex parte investigation of the facts resulted in findings that merely supported the judge's preformed opinion. Moreover, appellant argues that the probate court's decision to expand the hearing to an evidentiary hearing

on his own exceptions without proper notice and refusal to grant a continuance was an abuse of discretion that resulted in material prejudice.

{¶ 34}   With respect to any alleged bias or prejudice, the successor guardian responds that this court has no authority to render a decision with regard to disqualification or to void a trial court's judgment on that basis.   The successor guardian further argues that the probate court was behaving properly in its statutory role as superior guardian in investigating all matters related to the guardianships of Bryan and Lauder.   And because the probate court had the discretion to determine whether the fees were reasonable and beneficial to the wards, the successor guardian argues that the award may be reversed only upon a finding of abuse of discretion.

{¶ 35}   The successor guardian is correct that this court does not have jurisdiction to decide or review a motion to disqualify.   *State v. Merriweather* (May 6, 1998), Lorain App. No. 97CA006693, 1998 WL 239773; *State v. Dougherty* (1994), 99 Ohio App.3d 265, 268–269, 650 N.E.2d 495; *State v. Ramos* (1993), 88 Ohio App.3d 394, 398, 623 N.E.2d 1336.   While it is clear that this court does not have the authority to disqualify the probate judge, it is nevertheless our responsibility as a reviewing court to consider the propriety of the actions taken by the probate court in reviewing the probate court's actions and entry for an abuse of discretion.

{¶ 36}   Under R.C. 2101.24(A)(1)(e), the probate court has exclusive jurisdiction to appoint and remove guardians, to control their conduct, and settle their accounts.   As the successor guardian noted above, the probate court is the superior guardian of all wards that are subject to its jurisdiction.   R.C. 2111.50(A)(1) states:

{¶ 37}   "At all times, the probate court is the superior guardian of wards who are subject to its jurisdiction, and all guardians who are subject to the jurisdiction of the court shall obey all orders of the court that concern their wards or guardianships."

{¶ 38}   While this court recognizes the vast amount of discretion granted to the probate court in determining such matters, such discretion is not absolute. This court is troubled by the argument advanced on behalf of the successor guardian that the probate court, by virtue of its role as superior guardian, had the unfettered discretion to investigate the facts on its own, present the facts, and then rule upon those facts in deciding appellant's application for fees.   The statute authorizing the probate court to function as the superior guardian of a ward does not afford the court the power to interject itself in the proceedings to the extent that was done here, even with the best of intentions.   To do so was an abuse of discretion.

{¶ 39} Even in its role as superior guardian, the statutory scheme implies that advocates will present evidence to the court to allow the probate court to render an informed decision. The General Assembly has provided for the probate court to hire investigators. R.C. 2101.11(A)(2)(a) provides:

{¶ 40} "The probate judge shall provide for one or more probate court investigators to perform the duties that are established for a probate court investigator by the Revised Code or the probate judge."

{¶ 41} The statutes contemplate the court relying upon the evidence before it, including letters from physicians, reports of court investigators, the representations of the successor guardian or any guardian ad litem, as well as any evidence or argument advanced by appellant or his counsel. See, e.g., *In re Guardianship of Volkert* (Sept. 21, 1995), Franklin App. No. 95APF03–265, 1995 WL 559943.

{¶ 42} In *In re Guardianship of Alberts* (Apr. 26, 1989), Summit App. No. 13780, 1989 WL 41523, the court stated that the probate court might properly investigate and adjudicate all matters substantially related to the guardianship. However, this presumes a full and open proceeding. In *In re Estate of Marr* (Sept. 19, 1995), Ross App. No. 1151, 1985 WL 11154, the court acknowledged that under R.C. 2101.24(C), "[t]he probate court has plenary power at law and in equity to dispose fully of any matter that is properly before the court, unless the power is expressly otherwise limited or denied by a section of the Revised Code." Nevertheless, the court expressed reservations about a probate judge's conducting an ex parte investigation into court files that were not included in the record on appeal. Id.

{¶ 43} In this case, the probate court based its decision in part upon the evidence before it, including the court file. But we find that the probate court abused its discretion when it became both the investigator presenting the facts and the adjudicator deciding whether the facts were sufficient. Acceptance of the successor guardian's argument would constitute the unwarranted interference with the advocacy system under which this state and our country have operated for hundreds of years. See *In re Guardianship of Hicks* (1993), 63 Ohio Misc.2d 280, 624 N.E.2d 1125 (to allow the probate court to interject itself into settlement negotiations in a pending personal injury case and to substitute its judgment for that of trial counsel was an abuse of discretion).

{¶ 44} We are also troubled by the probate court's enlarging the hearing without notice to encompass its own exceptions and then refusing to grant a continuance to allow the parties to subpoena witnesses. Whether to grant a continuance is a matter entrusted to the broad and sound discretion of the trial judge. *State v. Mason* (1998), 82 Ohio St.3d 144, 155, 694 N.E.2d 932; *State v. Unger* (1981), 67 Ohio St.2d 65, 21 O.O.3d 41, 423 N.E.2d 1078, syllabus.

An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140.

{¶ 45} Here, the probate court initially set the matter for a hearing on the successor guardian's exceptions to accounts. The judge rejected the tendered settlement entry on fees and proceeded to enlarge the hearing, without notice, to encompass the court's own charges that appellant had breached his fiduciary duty, had conflicts of interest, and committed fraud and self-dealing. The trial court refused to grant a continuance and proceeded with an evidentiary hearing on its own exceptions. Without notice that the hearing was to be so enlarged, the parties had no witnesses to present because they had reached an agreement and thought the hearing was confined to the successor guardian's exceptions. The prejudice to appellant from this decision was apparent when a portion of the hearing was taken up with the probate judge disagreeing with counsel for appellant over what precisely was said in a telephone conversation with Linda Kaye concerning Bryan's competency. R.C. 2109.33 requires exceptions to be specific, in writing, filed at least five days prior to the hearing, and served upon the fiduciary. The probate judge's exceptions did not comply with these requirements. This resulted in counsel for appellant having no witnesses to testify concerning factual disputes such as social worker Linda Kaye's. This was an abuse of the court's discretion.

{¶ 46} Based on the foregoing, appellant's first and third assignments of error are sustained, the second assignment of error is moot, and we reverse the judgment of the probate court and remand for further proceedings in accordance with this opinion.

Judgment reversed
and cause remanded
for further proceedings
in accordance with this opinion.

PETREE and BROWN, JJ., concur.