JOURNAL ENTRY AND OPINION
{¶ 1} William J. Tetlow, Trustee of the Estate of Joseph P. Herrick, deceased, ("Trustee") appeals from the order of the probate court that approved distribution of funds from Joseph and Florence Herrick's guardianships to six individuals in 1996 and 1997, resulting in a disbursement of $120,000 from each guardianship estate. For the reasons set forth below, we affirm.
 {¶ 2} The facts of this matter were set forth in In re Estate ofHerrick, Cuyahoga App. No. 82057, 2003-Ohio-3025, as follows:
 {¶ 3} "Joseph P. Herrick and his wife, Florence E., had executed wills that devised the bulk of their estates to trusts created for the benefit of their children and grandchildren. The wills and trusts were executed on May 11, 1981, with the Herricks' son, Richard, ("Herrick" or "the guardian") designated executor of both wills and Tetlow as trustee. Both trust agreements were identically amended on August 16, 1988, to provide:
 {¶ 4} "`The Trustee shall pay the income from this trust at least as often as semi-annually to those of:
 {¶ 5} "`1. My daughter, Bonnie B. Herrick,
 {¶ 6} "`2. My son, Richard J. Herrick,
 {¶ 7} "`3. My son's wife, Alys S. Herrick,
 {¶ 8} "`4. My grandson, Richard N. Herrick,
 {¶ 9} "`5. My grandson, Andrew J. Herrick and
 {¶ 10} "`6. My grandson, Timothy Alan Herrick who shall then be living. In the event I shall have another grandchild, who is the natural born child of my said son or daughter, such grandchild shall have an interest in this trust equal to the above named beneficiaries.
 {¶ 11} "`The Trustee shall have the power and sole discretion to advance principal to any beneficiary. I remind my Trustee that the education of my grandchildren is of major interest to me and I therefore charge him to exercise his discretion accordingly.
 {¶ 12} "`When the survivor of my said son, my said daughter, and my said son's wife shall have died, and when I have no living grandchildren under the age of 25 years, this Trust shall terminate and the Trustee shall distribute the Trust assets equally to the then income beneficiaries of this Trust.' [Emphasis added.]
 {¶ 13} "The record reflects that sometime before November of 1996, Joseph and Florence Herrick were declared incompetent and Herrick was appointed as their guardian. On November 18, 1996, he requested authority to expend $120,000 from each of his parent's estates. In the applications[1] he asserted that each of his parent's wills named the same six beneficiaries: Herrick, his wife, his sister and his three sons. This was not true, however, because under those wills, Herrick and his sister were identified only as the successor beneficiaries of each parent's tangible chattel, if the surviving spouse of testator had predeceased. All other property was to pour over into the trusts. He contended that to save approximately $40,000 in federal estate taxes when his wards died, a gift of $10,000 from the assets of each guardianship should be given to each of the purported beneficiaries in 1996 and 1997. Each would then receive a total of $40,000 and each guardianship estate reduced by $120,000. Attached to the application was a letter from a CPA that, based upon the purported six beneficiaries, recommended such strategy. Also attached was a letter from Herrick's sister supporting the recommendation. The application was approved and distribution was made.
 {¶ 14} "Joseph Herrick died in June of 1998 and Florence in November, 1998. In November of 2001, Tetlow filed exceptions to the executor's final accounts of the estates' assets. He claimed that Herrick, as executor, had failed to redress wrongful distributions he had made to himself and his family while guardian of the estates." Tetlow v.Herrick, supra.
 {¶ 15} At the hearing, Tetlow asserted that the guardian falsely represented in the application to disburse funds that his parents wills named the same six beneficiaries, when in fact under the wills, Herrick and his sister were identified only as the successor beneficiaries of each parent's tangible chattel, if the surviving spouse of testator had predeceased, and all other property was to pour over into the trusts. Tetlow also claimed that Herrick knew that he and the other beneficiaries were to receive income from the trust but devised the gift disbursements in order to receive trust principal.
 {¶ 16} The guardian testified that he was acting in the best interests of his parents by making the gifts. He noted that in 1996, both parents were in nursing homes and had sufficient assets to sustain their care. He also noted that none of the beneficiaries objected to the gift disbursements.
 {¶ 17} The guardian also noted that none of the parents' estate planning documents prohibited the gifts during the parents' lifetimes, and he informed the court that he had also received a power of attorney over his mother in 1996.
 {¶ 18} When he was later named guardian of his parents' estates, his mother had $560,000 in assets and his father had $440,000 in assets.
 {¶ 19} The guardian claimed that he did not have a copy of an executed trust amendment so he established the disbursements on the basis of some handwritten notes of his father. He admitted that he did not include the documents in his application for gift disbursements. He also indicated that two accountants recommended the disbursement of the gifts for tax purposes but later admitted that one of the accountants did not so "recommend," that the tax advice was based upon his verbal descriptions of his parents' estates, and that only state taxes were reduced as a result of the gift disbursements. He denied that he knowingly supplied the court with false information.
 {¶ 20} Finally, the guardian established that he turned over $680,000 of his parents' assets to the Trustee.
 {¶ 21} Tetlow testified that the amended trust provided income to the six beneficiaries. During Mr. and Mrs. Herricks' lifetimes, the trust contained only $100 but after their deaths, the pour over will provision came into effect and the trust was to contain the balance of their property. Thus, Tetlow admitted the total amount in the trust would not be known until their deaths, and they were free to make gifts during their lifetimes. Tetlow also admitted that, as Trustee, he had discretion to make distributions to the six beneficiaries.
 {¶ 22} "On July 31, 2002, the magistrate's decision recommended dismissal of the exceptions because none of the trusts' named beneficiaries had objected to the final accounts and Tetlow had no other interest to assert. The decision stated that `the Trustee is merely a stakeholder and has no standing to continually raise collateral issues.'"Tetlow v. Herrick, supra. This court reversed and remanded, noting that the fact that none of the named beneficiaries objected to the final accounts did not eliminate Tetlow's interest as Trustee in carrying out the settlors' intent. This court held, moreover, that the refusal to allow Tetlow to maximize trust assets impaired his discretion in advancing principal and, therefore, impaired his ability to carry out the settlors' wishes. Finally, this court noted that, even if the guardian and his wife and sister established that they were beyond normal child-bearing age, the law would not regard the class of beneficiaries as closed until their deaths.
 {¶ 23} Upon remand, the magistrate determined that the gifts authorized by the guardian were proper and recommended that the Trustee's exceptions to the final account be overruled and the accounts be approved. The Trustee filed objections to the report and recommendation of the magistrate. The trial court subsequently overruled the objections and approved the final accounts. The Trustee now appeals and assigns three errors for our review.
 {¶ 24} The Trustee's first and second assignments of error are interrelated and state:
 {¶ 25} "The decision of the trial court is contrary to the law of Ohio."
 {¶ 26} "The decision of the trial court is against the manifest weight of the evidence."
 {¶ 27} The Trustee asserts that the probate court acted contrary to law because it was required to consider the factors set forth in R.C. 2111.50(D) in evaluating the gifts, and was required to notify the Trustee under R.C. 2111.50(E). He further claims that the court's decision is erroneous because it was premised upon Herrick's inaccurate claim of the "existence of a will with six beneficiaries" and no such document exists.
 {¶ 28} As an initial matter, we note that the probate court is the superior guardian of all wards that are subject to its jurisdiction. R.C. 2111.50(A)(1); In re Lauder, 150 Ohio App.3d 277, 2003-Ohio-406,780 N.E.2d 1025. As such, the probate court is vested with discretion. Inre Estate of Counts (Sept. 18, 2000), Ross App. No. 99CA2507, citing Inre Guardianship of Maurer (1995), 108 Ohio App.3d 354, 359,670 N.E.2d 1030.
 {¶ 29} Regarding factual determinations, a trial court will not be reversed where there is some competent, credible evidence going to all essential elements of the case. Whitaker v. Estate of Whitaker (1995),105 Ohio App.3d 46, 663 N.E.2d 681. Cf. In re Hartman Trust (1949), 29 Ohio L. Abs. 67, 70-71 (in suit raising exceptions to an accounting, same standard of review applies as in a trial by jury; appellate court must yield to the judgment of the trial court on all questions of fact unless such determinations are against the manifest weight of the evidence).
 {¶ 30} With regard to the statutory law, we note that R.C. 2111.50
provides in pertinent part as follows:
 {¶ 31} "(A)(1) At all times, the probate court is the superior guardian of wards who are subject to its jurisdiction, and all guardians who are subject to the jurisdiction of the court shall obey all orders of the court that concern their wards or guardianships.
 {¶ 32} "(2) (a) Subject to divisions (A)(2)(b) and (c) of this section, the control of a guardian over the person, the estate, or both of his ward is limited to the authority that is granted to the guardian by the Revised Code, relevant decisions of the courts of this state, and orders or rules of the probate court.
 {¶ 33} "(b) Except for the powers specified in division (E) of this section and unless otherwise provided in or inconsistent with another section of the Revised Code, the probate court may confer upon a guardian any power that this section grants to the probate court in connection with wards.
 {¶ 34} "* * *
 {¶ 35} "(B) In connection with any person whom the probate court has found to be an incompetent or a minor subject to guardianship and for whom the court has appointed a guardian, the court has, subject to divisions (C) to (E) of this section, all the powers that relate to the person and estate of the person and that he could exercise if present and not a minor or under a disability, except the power to make or revoke a will. These powers include, but are not limited to, the power to do any of the following:
 {¶ 36} "* * *
 {¶ 37} "(7) Make gifts, in trust or otherwise, to relatives of the person and, consistent with any prior pattern of the person of giving to charities or of providing support for friends, to charities and friends of the person.
 {¶ 38} "(D) If the court is to exercise or direct the exercise, pursuant to division (B) of this section, of the power to make gifts in trust or otherwise, the following conditions shall apply:
 {¶ 39} "(1) The exercise of the particular power shall not impair the financial ability of the estate of the person whom the probate court has found to be an incompetent or a minor subject to guardianship and for whom the court has appointed a guardian, to provide for his foreseeable needs for maintenance and care;
 {¶ 40} "(2) If applicable, the court shall consider any of the following:
 {¶ 41} "(a) The estate, income, and other tax advantages of the exercise of a particular power to the estate of a person whom the probate court has found to be an incompetent or a minor subject to guardianship and for whom the court has appointed a guardian;
 {¶ 42} "(b) Any pattern of giving of, or any pattern of support provided by, the person prior to his incompetence;
 {¶ 43} "(c) The disposition of property made by the will of the person;
 {¶ 44} "(d) If there is no knowledge of a will of the person, his prospective heirs;
 {¶ 45} "(e) Any relevant and trustworthy statements of the person, whether established by hearsay or other evidence.
 {¶ 46} "(E)(1) The probate court shall cause notice as described in division (E)(2) of this section to be given and a hearing to be conducted prior to its exercise or direction of the exercise of any of the following powers pursuant to division (B) of this section:
 {¶ 47} "(a) The exercise or release of powers as a donee of a power of appointment;
 {¶ 48} "(b) Unless the amount of the gift is no more than one thousand dollars, the making of a gift, in trust or otherwise.
 {¶ 49} "(2) The notice required by division (E)(1) of this section shall be given to the following persons:
 {¶ 50} "(a) Unless a guardian of a ward has applied for the exercise of a power specified in division (E)(1) of this section, to the guardian;
 {¶ 51} "(b) To the person whom the probate court has found to be an incompetent or a minor subject to guardianship;
 {¶ 52} "(c) If known, to a guardian who applied for the exercise of a power specified in division (E)(1) of this section, to the prospective heirs of the person whom the probate court has found to be an incompetent or a minor subject to guardianship under section 2105.06 of the Revised Code, and any person who has a legal interest in property that may be divested or limited as the result of the exercise of a power specified in division (E)(1) of this section;
 {¶ 53} "(d) To any other persons the court orders."
 {¶ 54} Applying all of the foregoing, we are troubled by the large total amount of the gifts, the guardian's failure to produce for the court the estate documents in his possession which gave the beneficiaries "income" rather than principal, his failure to inform the court that his mother was reluctant to share her estate plans with him, the absence of information concerning his parents' wishes regarding their medical care in the event of catastrophic illness, and the absence of information concerning the parents' prior pattern of giving. Moreover, while tax issues may certainly be considered by a guardian, the ultimate objective of the guardian is to act in the best interest of the estate. R.C. 2111.14(B); In re Estate of Bednarczuk (1992), 80 Ohio App.3d 548, 551,609 N.E.2d 1310. Under the unique circumstances presented here, however, we cannot conclude that the probate court abused its discretion in connection with its authorization of the gift disbursements or its approval of the account. Ultimately, the gifts did not impair the finances of the estates and did not interfere with provision for Mr. and Mrs. Herrick. Some tax benefits resulted from the gifts, the gifts furthered the Herricks' stated objectives of assisting the grandchildren with their educations and treating the beneficiaries equally, and apart from the trustee, no one raised any objections to the gifts. Moreover, the Herricks' trust did not operate to bar inter vivos gifts, did not contemplate a specific amount of principal and was ultimately funded with significant principal. Accordingly, we find that some competent, credible evidence supports the judgment in this matter.
 {¶ 55} With regard to the issue of notice to the Trustee, it is clear that Tetlow's participation at an earlier time could have assisted the court in its decision-making, but we cannot conclude that his absence resulted in reversible error.
 {¶ 56} The first assignment of error is overruled.
 {¶ 57} The Trustee's third assignment of error states:
 {¶ 58} "The trial court erred by denying exceptor's motion for the appointment of a guardian ad litem for the minor trust beneficiary."
 {¶ 59} Within this assignment of error, the Trustee asserts that the interests of the minor beneficiary, Timothy Herrick, are in conflict with the guardian's as the payment of funds directed principal to individuals who were not direct principal recipients under the deceased's estate plans.
 {¶ 60} A guardian ad litem is a special guardian appointed by the court during a particular proceeding to protect the interests of the ward in that proceeding. See In re Guardianship of Bowen (Apr. 22, 1993), Pickaway App. No. 92-CA-25.
 {¶ 61} R.C. 2111.23 provides:
 {¶ 62} "Whenever a ward, for whom a guardian of the estate or of the person and estate has been appointed, is interested in any suit or proceeding in the probate court, such guardian shall in all such suits or proceedings act as guardian ad litem for such ward, except as to suits or proceedings in which the guardian has an adverse interest. Whenever a minor or other person under legal disability, for whom no guardian of the estate or of the person and estate has been appointed, is interested in any suit or proceeding in such court, the court may appoint a guardian or a guardian ad litem. In a suit or proceeding in which the guardian has anadverse interest, the court shall appoint a guardian ad litem to represent such minor or other person under legal disability." (Emphasis added.)
 {¶ 63} In this matter, the minor had an "interest" in the proceedings, but it was his father, the guardian, who had the an "adverse interest" in the proceedings. Accordingly, the court was not required to appoint a guardian ad litem. We find no abuse of discretion.
 {¶ 64} For the reasons set forth below, the judgment of the trial court is affirmed.
It is ordered that appellees recover of appellant their costs herein taxed.
The Court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this Court directing the Probate Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Rocco, J., concurs.
 McMonagle, J., concurs in judgment only
[1] In his 1996 application to disburse funds, the guardian indicated that he had consulted with two accountants in proposing the gifts, that the gifts would result in approximately $40,000 in savings of estate taxes, that the gifts would not adversely affect the care of his parents.